IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARL A. PONDEXTER ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 11-857 |
| vs. ) | Judge Nora Barry Fischer |
| ) | |
| THE ALLEGHENY COUNTY (PROPER), ) | |
| THE ALLEGHENY COUNTY HOUSING ) | |
| AUTHORITY, DAN ONORATO, JAMES T. ) | |
| ZAPF, FRANK AGGAZIO, THOMAS ) | |
| MCPOYLE, JOHN JOYCE, et al, | |
| | |
| Defendants. | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Presently before the Court is a Motion to Dismiss (Docket No. 60) Plaintiff's Civil Action Complaint (Docket No. 4) under Rule 12(b)(6) filed by Defendants Allegheny County and Allegheny County Chief Executive Dan Onorato ("Defendants"). Plaintiff Earl A. Pondexter ("Plaintiff"), appearing *pro se*, filed his Complaint alleging racial discrimination and retaliation. Defendants seek dismissal of Plaintiff's Complaint against them by arguing that Plaintiff has not pled sufficient facts to render his claims plausible as required by the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). (Docket No. 61). For the reasons discussed herein, Defendants' Motion (Docket No. 60) is GRANTED with regard to Plaintiff's claims against these Defendants.

## II. RELEVANT FACTUAL BACKGROUND

Because this matter comes to this Court on a Rule 12(b)(6) Motion to Dismiss, the factual allegations set forth in Plaintiff's Complaint are accepted as true. *Hemi Group, LLC. v. City of N.Y.*, ––– U.S. ––––, 130 S.Ct. 983, 986–87, 175 L.Ed.2d 943 (2010) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993)). The pertinent facts are as follows.

Plaintiff alleges racial discrimination and retaliation against Defendant Allegheny County Housing Authority ("ACHA"), claiming that ACHA is "wantonly and maliciously denying the Plaintiff a full, 'Fair and Equal Opportunity' to use and enjoy a dwelling on the basis of racism and retaliation." (Docket No. 4 at ¶ 1). He argues that he submitted a completed and signed Allegheny County Low Income Housing Application to ACHA on May 10, 2010. (*Id.* at ¶ 23). Subsequent to said submission, Plaintiff contends that he did not receive any notification regarding his eligibility or ineligibility for low income housing assistance, administered through ACHA. (*Id.*). On May 28, 2010, Plaintiff filed a 903 HUD FHEO discrimination complaint against ACHA with the local Fair Housing Partnership Program. (*Id.* at ¶ 24). HUD FHEO subsequently notified Plaintiff that it would not review or investigate Plaintiff's HUD FHEO 903 complaint and closed the case. (*Id.* at ¶ 25). Plaintiff next filed a Pennsylvania Human Relations Act Complaint against ACHA on December 13, 2010. (*Id.* at ¶¶ 25-26). Approximately six months later, on May 27, 2011, the Pennsylvania Human Relations Commission ("Commission") determined that insufficient evidence existed to support Plaintiff's PHRA Complaint, specifically finding that Plaintiff never filed an application for low income housing assistance. (*Id.* at ¶ 27). Accordingly, the Commission informed Plaintiff on June 10, 2011 that "the facts of the case do not establish that probable cause exists to credit the allegations

of unlawful discrimination" and dismissed his complaint. (*Id.*; Docket No. 4-1). The instant Complaint followed. (Docket No. 4).

### III. RELEVANT PROCEDURAL HISTORY

Plaintiff filed his Complaint, claiming racial discrimination and retaliation, in this Court on June 30, 2011. (Docket No. 4). On July 12, 2011, Plaintiff filed a document entitled "Planning For Discovery & Conference of the Parties," (Docket No. 7), which contained a "Prayer for Exigent Injunctive Relief." (*Id.*). The Court convened a Status Conference on August 10, 2011 to hear the parties' positions regarding Plaintiff's "Prayer for Exigent Injunctive Relief." (Docket No. 14). During said conference, ACHA made an oral Motion to enjoin Plaintiff from filing further claims prior to receiving certification of those claims from a Magistrate Judge, which the Court took under advisement. (*Id.*). Thereafter, Plaintiff filed a Motion for Appointment of Magistrate Judge pursuant to 28 U.S.C. 636(C)(1) and a Magistrate's Ruling on the Defendants' Motion for Certification of the Plaintiff's Claims and Contentions pursuant to FED. R. CIV. P. 16(b)(1)(5), (Docket No. 30), which was denied on September 26, 2011. (Docket No. 38). On November 4, 2011, the Court issued its memorandum opinion denying the Defendant's Motion to enjoin Plaintiff from filing further claims prior to receiving certification of those claims from a Magistrate Judge.[1] (Docket No. 51).

Three weeks later, Defendants filed a Motion to Dismiss and supporting brief pursuant to FED. R. CIV. P. 12(b)(6). (Docket Nos. 53-54). On December 20, 2011, the Motion was dismissed without prejudice to provide Plaintiff, a *pro se* litigant, an opportunity to file an Amended Complaint by January 13, 2012.[2] (Docket No. 57). However, Plaintiff subsequently

---

[1] Throughout the course of this action, Plaintiff filed several Motions for Summary Judgment, which were denied as premature. (Docket Nos. 5, 8, 33, 34, 47, 48, 49, 50, 63, 64).

[2] Given that Plaintiff is a *pro se* litigant and that the allegations in his pleadings are to be construed liberally in his favor, *United States v. Otero*, 502 F.3d 331, 334 (3d Cir.2007) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92

3

filed notice of his intention to stand on his Original Complaint, (Docket No. 58), and thus, Defendants were ordered to answer, move or otherwise respond to the same. (Docket No. 59). Accordingly, on January 18, 2012, Defendants filed their renewed Motion to Dismiss and supporting brief pursuant to FED. R. CIV. P. 12(b)(6). (Docket Nos. 60-61). The Court then issued an Order on Motions Practice (Docket No. 62), but Plaintiff did not respond to Defendant's Motion within the time frame set forth in said Order. As such, the Motion is now ripe for disposition.

## IV. LEGAL STANDARD

To survive a motion to dismiss brought under FED. R. CIV. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) and FED. R. CIV. P. 8(a)(2) (providing that a valid complaint requires only "a short and plain statement of the claim" showing entitlement to relief). In *Iqbal*, the Supreme Court clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210–11. The Court further explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953; *Santiago v. Warminster Twp.*, 629 F.3d 121, 128

---

S.Ct. 594, 30 L.Ed.2d 652 (1972)), the Court found that Plaintiff should be permitted to file an Amended Complaint conforming his pleading to the requirements set forth in the Federal Rules of Civil Procedure. *See Riordan v. H.J. Heinz Co.*, 2008 WL 5427907, at *2 (W.D. Pa. Dec. 30, 2008). Further, the law of this circuit dictates "that leave to amend must be granted *sua sponte* before dismissing [civil rights] complaints." *Fletcher-Harlee Corp. v. Pote Concrete Contrs.*, Inc., 482 F.3d 247, 252 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

(3d Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955); *see also Fowler*, 578 F.3d at 210.

The determination of whether a complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955); *see also Fowler*, 578 F.3d at 210–11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "plausible claim for relief."). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

Nonetheless, "a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (citing *Haines*, 404 U.S. at 520-21). *Cf.* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

## V. DISCUSSION

As noted, Plaintiff has asserted claims of racial discrimination and retaliation against Defendants. (Docket No. 4). In his Complaint, he cites numerous federal and state statutes as grounds for relief. (*Id.*). The only plausible claim Plaintiff has brought against these Defendants is his 42 U.S.C. § 1983 claim. The Court likewise observes that Defendants base their Motion to

5

Dismiss solely on Plaintiff's claim under section 1983 as they cite cases pertaining specifically to section 1983 claims. (*See* Docket No. 61).

Section 1983 provides that "every person who, under color of [state law] subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity." 42 U.S.C. § 1983. In other words, section 1983 does not create substantive rights but provides a vehicle by which violation of rights created by the Constitution or federal law may be vindicated. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct was committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds*; *Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

1. *Defendant Onorato*

Defendants first argue that Plaintiff fails to state a claim against Onorato in his individual capacity or in his official capacity. (Docket No. 61). They claim that, to establish individual liability against a defendant, "it is a requirement that defendants have a 'personal involvement' in the alleged wrong doing," citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) and *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). *Rode* explains that "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and

6

acquiescence," and that "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.3d at 1207.

Several courts have questioned whether the "knowledge and acquiescence" standard set forth in *Rode* remains good law in light of *Iqbal*, which denied that a supervisor could be liable based on knowledge of, or acquiescence in, his subordinate's acts:

> In a § 1983 suit or a *Bivens*[3] action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Iqbal*, 129 S.Ct. 1937, 1949. *See e.g. Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 191 n.5 (3d Cir. 2009); *Perano v. Arbaugh*, 10–cv–01623, 2011 WL 1103885, at *7 (E.D. Pa. Mar. 25, 2011); *Ramos-Vazquez v. Primecare Medical, Inc.*, 09-cv-00364, 2010 WL 3855546, at *10 (E.D. Pa. Sept. 30, 2010).

The Third Circuit has "recognized that *Iqbal* may have changed the requirements for alleging personal involvement" in a section 1983 suit, "but has not yet overruled the standard articulated in *Rode*." *Ramos-Vazquez,* 2010 WL 3855546, at *10; *see e.g. Bayer*, 577 F.3d at 191 n.5. Nevertheless, in *Park v. Veasie*, 720 F. Supp. 2d 658, 667 (M.D. Pa. 2010), a district court noted that "it appears that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right."

Further, in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court "addressed and rejected the argument that a supervising public official has an

---

[3]   *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1999).

affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). "It held that even where a pattern of constitutional violations by subordinates is shown, supervising officials do not violate the constitutional rights of the victims of such misconduct unless they have played an 'affirmative part' in that misconduct." *Id.* (citing *Rizzo* at 423 U.S. at 377, 96 S.Ct. at 607).

Defendants highlight the fact that Plaintiff's Complaint "is absent any allegations addressed toward Defendant Onorato" beyond his name appearing in the caption and maintain that the Complaint's allegations, read in the light most favorable to the Plaintiff, are limited to ACHA defendants, only. (Docket No. 61). As stated, the Court provided Plaintiff an opportunity to amend his Complaint, but he declined the invitation. (Docket Nos. 57-58). The Court finds that the Complaint does not contain any allegations directed to Onorato. Since Plaintiff has made no showing that Onorato was personally involved, let alone played an affirmative role, in any alleged racial discrimination and retaliation, Onorato must be dismissed in his individual capacity, with prejudice.

Further, "a suit against a state official in his or her capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)). Indeed, "[a]s long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citing *Brandon*, 469 U.S. at 471-72).

8

Onorato is the Chief Executive of Allegheny County and Allegheny County is already named as a Defendant; accordingly, Onorato must also be dismissed in his official capacity, with prejudice.

### 2. *Defendant Allegheny County*

Second, Defendants argue that the Complaint fails to state a claim against Allegheny County.[4] (Docket No. 61). The Supreme Court held in *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), that local governing bodies are "persons" within the meaning of section 1983 and can be sued directly under the act for monetary, declaratory, or injunctive relief. To establish municipal liability, a plaintiff must: 1) demonstrate the existence of an unlawful policy or custom, and 2) prove that the municipal practice was the proximate cause of his injury. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). In other words, a municipality is liable "where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In order to establish causation, a plaintiff must set forth a "plausible nexus" or "affirmative link" between the violation and the municipality's custom or practice. *Bielevicz*, 915 F.2d at 850.

---

[4]  Defendants argue, in the alternative, that Allegheny County and ACHA are separate legal entities, and if they are not, then *respondeat superior* does not apply to make Allegheny County liable for the actions of ACHA. (Docket No. 61). In fact, Allegheny County and ACHA are separate legal entities. 1937 Pa. Laws, Act No. 265 § 4(a) ("Formation of Housing Authorities") states:

> There are hereby created *separate and distinct bodies*, corporate and politic, one for each city (as herein defined), and one for each of the counties of the Commonwealth. Each such Authority may be known as the housing authority of the city or the county, as the case may be, but *shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function*. Each such Authority shall transact no business or otherwise become operative until and unless a finding is made, as hereinafter provided in this section.

(Emphasis added). This language was codified in 35 P.S. § 1544(a). *See Stevenson v. Lawrence Cnty., Pa.*, 2008 WL 4552946, at *1 (W.D. Pa. Oct. 9, 2008) (granting Motion to Dismiss where Defendant Lawrence County argued it was not vicariously liable in discrimination action against Housing Authority of Lawrence County, citing 35 P.S. § 1544(a), and Plaintiff did not contest the argument as set forth in Lawrence County's Motion).

Accordingly, the Court concluded in *Monell* that a governmental unit may only be liable under section 1983 when its "policy" or "custom," whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, directly inflicted the injury. *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible, *i.e.*, acts that the municipality has officially sanctioned or ordered. *Id.* In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court further clarified that "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing a final policy with respect to the subject matter in question." (Citation omitted).

Moreover, mere identification of a policy or custom is not enough to establish municipal liability; a plaintiff also must establish causation. In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation at issue. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights).

As set forth above, Allegheny County cannot be liable for any constitutional deprivations suffered by Plaintiff unless "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. The Supreme Court has instructed that "policy" is made when a decision-maker possessing final authority over the subject matter issues an official proclamation, policy, or edict. *Pembaur*, 475 U.S. at 481.

Custom can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. *Monell*, 436 U.S. at 690. *See also Bielevicz*, 915 F.2d at 850.

In the case at bar, Plaintiff has not identified any policy or custom attributable to Allegheny County. (Docket No. 4). The gravamen of his Complaint is based on circumstances involving ACHA, not Allegheny County. (*Id.*). Further, since ACHA and Allegheny County are separate and distinct legal entities, the doctrine of *respondeat superior* does not apply to hold Allegheny County liable. *Santiago*, 629 F.3d at 128 ("Liability based on *respondeat superior* arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm") (quoting *Monell*, 436 U.S. at 692); *see also Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990) (no liability exists under section 1983 solely based on a theory of vicarious liability or *respondeat superior*).

Plaintiff has also not set forth any evidence of incidents that have occurred in the past to prove some pattern of conduct that could establish a discriminatory custom or policy of Allegheny County directed at him.[5] (*Id.*). Thus, Plaintiff has failed to allege facts that could prove an essential element of his case under 42 U.S.C. § 1983. As his allegations are insufficient to state a claim upon which relief may be granted against Allegheny County, Plaintiff's Complaint against Allegheny County must be dismissed, with prejudice.

---

[5] Even "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma v. Turtle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *see also Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (plaintiff's mere assertion of the incident at issue, plus vague assertions about the police department's failure to investigate other wrongdoings, did not provide sufficient proof of a policy or custom to satisfy the dictates of section 1983).

### 3. *Leave to Amend*

As indicated, the Court has ruled that Plaintiff's claims against Defendants are dismissed, with prejudice. Plaintiff has not sought leave to amend his Complaint. (*See* Docket No. 58). The United States Court of Appeals for the Third Circuit has held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Further, "even when [a] plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." *Id.*

The "grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Allowing an amendment would be futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane*, 213 F.3d at 115 (citing, *inter alia*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434).

In this Court's estimation, leave to amend is not required because any amendment of Plaintiff's Complaint would be futile. Plaintiff's section 1983 claims against these Defendants are not viable, as he has not and cannot set forth any facts in support thereof. Moreover, Plaintiff was previously provided the opportunity to amend his Complaint and stood on his Complaint.

(Docket Nos. 57-58). For these reasons, the Court declines to grant Plaintiff the opportunity to amend.

## VI. CONCLUSION

Based on the foregoing, the subject Defendants' Motion to Dismiss is GRANTED. Further, the Court ORDERS that said Defendants be stricken from the caption in this matter. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record.

Date:  February 24  , 2012