IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EARL A. PONDEXTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-857 |
| | ) | Judge Nora Barry Fischer |
| | ) | |
| THE ALLEGHENY COUNTY HOUSING | ) | |
| AUTHORITY, JAMES T. ZAPF, FRANK | ) | |
| AGGAZIO, THOMAS MCPOYLE, and | ) | |
| JOHN JOYCE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

## I.  INTRODUCTION

The present matter is before the Court on cross motions for summary judgment.
(Docket Nos. 98 and 100).  Plaintiff, proceeding *pro se*, claims that Defendants, the Allegheny
County Housing Authority, James T. Zapf, Frank Aggazio, Thomas McPoyle, and John Joyce, et
al. (collectively "ACHA")[1] unlawfully denied his housing application based on his alleged
mental disability and race discrimination. (Docket No. 4).  He has brought federal and state law
claims against the ACHA relying on these allegations and has moved for summary judgment
arguing that he is entitled to judgment on same. (Docket No. 98).  ACHA cross-moves for
summary judgment, arguing that there is no proof that Plaintiff ever applied for housing
assistance with the ACHA and that he has otherwise failed to present evidence sufficient to
sustain any of his claims. (Docket No. 100 at 2-3).  For the reasons that follow, Defendants'

---

[1] In addition, when referencing ACHA's Motion for Summary Judgment, the Court is likewise referencing the
Summary Judgment Motion of all Defendants, as they are one in the same.

Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED, with prejudice.

## II. FACTUAL BACKGROUND[2]

### A. Disability Status

In June 1996, the Social Security Administration determined that Plaintiff was totally disabled, (Docket No. 102-1 at 1), because he was diagnosed with "adjustment and impulse control disorder with narcissistic personality" and was "compulsively disturbed and potentially homicidal." (*Id.* at 2).[3]  In his Second Amended Response to ACHA's Motion, Plaintiff

---

[2] The Court notes that it entered an Order explicitly directing the parties to adhere to Rule 56(C) of the Local Rules of the United States District Court for the Western District of Pennsylvania ("L.Cv.R. 56(C)"). (Docket No. 97). L.Cv.R. 56(C) mandates that an opposing party's response to a motion for summary judgment admit or deny each numbered paragraph in the moving party's Concise Statement of Material Facts while setting forth a basis for same and assert any other alleged material facts. W.D. PA. L.Cv.R. 56 (C)(1) (2009).  In support of its Motion for Summary Judgment, ACHA filed a Concise Statement of Material Facts. (Docket No. 101). However, Plaintiff's Response, (Docket No. 104), Brief, (Docket No. 105), and Amended Response, (Docket No. 109), asserted conclusions of law and legal argument, but very few statements of fact, in violation of L.Cv.R. 56(C). The Court entered an Order, directing him to file a Second Amended Response, in compliance with Rule 56 and L.Cv.R. 56(C). (Docket No. 110).  Thereafter, Plaintiff filed his Second Amended Response, with the same defects. (Docket No. 111).

Under Local Rule 56(E) ("L.Cv.R. 56(E)"), undisputed facts "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." W.D. PA. L.Cv.R. 56(E) (2009).  In prior cases, this Court has strictly applied L.Cv.R. 56(C) and L.Cv.R. 56(E). *See Janokowski v. Demand,* No. 06–00618, 2008 WL 1901347, at *1 (W.D. Pa. Apr. 25, 2008) (defendant's statement of material facts were deemed admitted for the purpose of summary judgment because of the plaintiff's violation of Local Rule 56.1(c)); *see also GNC Franchising LLC v. Kahn,* Nos. 05–1341; 06–00238, 2008 WL 612749, at *1 (W.D. Pa. Mar. 3, 2008) (the facts set forth in plaintiff's statement of facts were deemed admitted by defendants due to defendants' violation of Local Rule 56.1(E)); *Ferace v. Hawley,* No. 05–1259, 2007 WL 2823477, at *1 (W.D. Pa. Sept. 26, 2007) (citing *Benko v. Portage Area Sch. Dist.,* No. 03–233J, 2006 WL 1698317 (W.D. Pa. June 19, 2006)).

However, the Court is mindful that Plaintiff is proceeding in this civil rights action *pro se,* and is cognizant that during the summary judgment stage, *pro se* submissions are to be construed liberally. *Lynn v. Sec'y, Dep't of Def.*, 431 F. App'x 147, 150 (3d Cir. 2011).  Recognizing its duty, the Court has considered the entire record, construing each of *pro se* Plaintiff's submissions liberally, with an understanding that Plaintiff has a mental disability.  Even with such diligent consideration, the Court finds that Plaintiff has not presented any evidence refuting ACHA's Statement of Material Facts.  Thus, for the purposes of the instant motions, the facts, as set forth in ACHA's Statement of Material Facts, are deemed admitted by Plaintiff, in accordance with L.Cv.R. 56(E), and are relied upon by this Court in making its rulings.

[3] A review of the record indicates that Plaintiff has inconsistently represented his mental health status in the current litigation.  For instance, during the Court's August 10, 2011 Status Conference, Plaintiff first mentioned that there was "nothing mentally wrong with [him]." (Docket No. 25 at p. 9, lns. 23-25).  Next, during that same conference,

maintains that he has mental health issues and is disabled. (Docket No. 111 at 10-11). Given same, ACHA concedes that for purposes of the present summary judgment proceedings, Plaintiff's diagnosis qualifies as a disability. (Docket No. 101 at 2).

### B. Housing Application

By way of background, the ACHA's admissions policy states that in order for an applicant to receive housing assistance, he/she must complete and submit an application via mail or hand delivery. (Docket Nos. 102-1 at 35; 109-1 at 1). The application requires an applicant to disclose his/her criminal history and explains that a criminal background check will be conducted and used to determine eligibility. (Docket No. 111-1 at 16-20). Applications are entered into the ACHA computer system to be processed in the order in which they are received. (Docket No. 109-1 at 1).

Plaintiff alleges that on May 1, 2010, he downloaded an Allegheny County Low Income Housing application. (Docket No. 4 at ¶¶ 22-23). Plaintiff contends that he submitted his completed and signed application to ACHA via regular mail through the United States Postal Service on May 10, 2010.[4] (Docket No. 111 at 8). ACHA disputes Plaintiff's recitation of these facts. (*See* Docket No. 101). Rather, it claims that it has no record of Plaintiff's application and asserts that Plaintiff has admitted that he cannot prove that he submitted an application. (*Id.* at ¶¶ 20-22).

---

Plaintiff admitted that he had been placed in Western Psychiatric Institute for treatment of various mental health issues, including impulse control disorder, intermittent explosive disorder and that he is compulsively disturbed. (*Id.* at p. 25, lns. 11-15). Later during the conference, Plaintiff stated that he has no health issues, despite acknowledging that he is receiving $882 per month in Social Security Disability Income for his mental health issues. (*Id.* at p. 10, lns. 14-17; p. 50, ln. 19).

[4] Interestingly, during the Court's August 10, 2011 Status Conference, Plaintiff acknowledged ACHA's suggestion that he complete another application but he refused. (Docket No. 25 at p. 46, lns. 2-6). During that same conference, Plaintiff stated multiple times that he no longer wants housing. (*Id.* at p. 27, lns. 5-8; p. 29, lns. 22-23; p.60 at ln. 25). Moreover, Plaintiff now has low income housing from the City of Pittsburgh, as evidenced by his Housing Authority of the City of Pittsburgh Tenant Billing Statement. (Docket Nos. 109 at 4; 109-3).

To that end, Mr. James Bulls, the ACHA Director of Housing Management-Operations Department, filed an Affidavit stating that upon a review of its records, as well as an inquiry with the site managers, the ACHA has no knowledge of Plaintiff's May 2010 application. (Docket No. 102-1 at 40). Mr. Bulls also determined that Plaintiff's name does not currently appear on the ACHA's waiting list. (*Id.*). In addition, ACHA filed its list of applications received from April 2010 through June 2010, which reveals that the ACHA did not receive an application from Plaintiff. (*Id.* at 41-44).

In the course of discovery, ACHA requested that Plaintiff produce his May 2010 application and any supporting documentation. (*Id.* at 38). Plaintiff did not respond. (Docket No. 95). Hence, during the Court's Telephonic Post Fact Discovery Status Conference, ACHA again requested all documents in support of Plaintiff's claim to which he replied that he did not have any additional documents and would rely on the mailbox rule to establish the fact of his application. (*Id.*). In addition, Plaintiff admitted that he cannot prove that he submitted an application to the ACHA. (Docket No. 25 at p. 45, lns. 19-24).

*C. HUD FHEO and PHRC Complaints*

On May 28, 2010, Plaintiff filed a 903 United States Department of Housing and Urban Development ("HUD") Office of Fair Housing and Equal Opportunity ("FHEO") discrimination complaint against ACHA with the Fair Housing Partnership of Greater Pittsburgh.[5] (Docket No. 4 at ¶ 24). HUD FHEO did not review or investigate the complaint and closed the case. (*Id.* at ¶ 25). Subsequently, on December 13, 2010, Plaintiff filed a Pennsylvania Human Relations Act ("PHRA") Complaint against ACHA. (*Id.* at ¶¶ 25-26). On May 27, 2011, the Pennsylvania Human Relations Commission ("PHRC") determined that Plaintiff never filed an application and

---

[5] The Fair Housing Partnership of Greater Pittsburgh is a nonprofit organization that provides housing counseling services throughout southwestern Pennsylvania.

concluded that there was insufficient evidence to establish a *prima facie* case of discrimination. (*Id* at ¶ 27; Docket Nos. 98-1 at 10; 102-1 at 24-34).

### D. Threats Against a Federal Judge

Plaintiff asserts that the ACHA improperly influenced the PHRC while his PHRC claim was pending. (Docket Nos. 98 at 15; 25 at p.61, lns. 3-6). In particular, he maintains that ACHA's April 22, 2011 letter to the PHRC falsely accused him of being arrested for threatening a federal judge. (*Id.*). Plaintiff makes this allegation because the PHRC's Findings noted that Plaintiff "was arrested for threatening the Federal District Court Judge who was hearing his discrimination complaint against [ACHA]." (Docket No. 102-1 at 26-27). While that suit was pending, Plaintiff had filed a Motion to Disqualify the Honorable Joy Flowers Conti because he was visited by the United States Marshals. (Docket No. 102-1 at 82). In a Memorandum Order, wherein she recused herself, Judge Conti wrote that the Marshals visited Plaintiff due to "comments made by him on the record during a status conference held on April 19, 2005." (*Id.*). ACHA concedes for purposes of the present summary judgment proceedings that Plaintiff was not arrested for threatening a federal judge in 2005.[6] (Docket No. 101 at 6).

## III.   RELEVANT PROCEDURAL HISTORY

After Plaintiff's PHRA complaint was dismissed, Plaintiff filed the instant Complaint alleging race and disability discrimination against ACHA, on June 30, 2011. (Docket No. 4).[7]

---

[6] However, Plaintiff admits that he was arrested in 2004 and 2007 for threatening ACHA employees. (Docket No. 4 at ¶ 35).

[7] Plaintiff has filed three lawsuits against ACHA, including the current action, in the United States District Court for the Western District of Pennsylvania. The following is a summary of each. In November 2001, Plaintiff filed his first suit against ACHA in this District (Civil A. 01-cv-2161), alleging race and disability discrimination because Plaintiff was allegedly denied a two-bedroom voucher, as a participant in the Section 8 Program in 1999. (Civil A. 01-cv-2161, Docket No. 2). In September 2007, the Court granted ACHA's Motion for Summary Judgment, as Plaintiff's claims were barred by the applicable statute of limitations. (*Id.* at Docket No. 137). Plaintiff appealed and the judgment was affirmed by the United States Court of Appeals for the Third Circuit on June 22, 2009. (*Id.* at Docket No. 151). Then, in April 2004, Plaintiff filed a second suit against ACHA in this District (Civil A. 04-cv-536). There, Plaintiff alleged race and disability discrimination, in connection with his eviction from his residence

Plaintiff asserts claims under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d ("Title VI"); the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"); 42 U.S.C. § 1983; the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA'); 42 U.S.C. § 1986; the Housing and Community Development Act, 42 U.S.C. § 5301 *et seq.* ("HCDA"); 42 U.S.C. § 14141; as well as criminal claims under 42 U.S.C. § 3631 and 18 U.S.C. §§ 241, 242 and 245. (*Id.*).

On November 28, 2011, ACHA filed its Answer, denying liability. (Docket No. 55). During the Court's Telephonic Post Fact Discovery Status Conference, the parties advised that discovery was complete with the exception of Plaintiff's request for the April 22, 2011 letter[8] referenced in the PHRC's Findings. (Docket No. 95). Accordingly, the Court entered an Order directing ACHA to produce said letter. (Docket No. 96). ACHA then produced the letter, effectively concluding discovery. (Docket No. 97). Subsequently, the Court entered an Order scheduling dispositive motions. (*Id.*).

Plaintiff timely filed his Motion for Summary Judgment. (Docket No. 98). Next, ACHA timely filed its Motion for Summary Judgment, (Docket No. 100), followed by its Concise Statement of Material Facts, (Docket No. 101), Exhibits related to same, (Docket No. 102), and Supporting Brief, (Docket No. 103). In turn, Plaintiff filed his Response, (Docket No. 104), as well as his Brief and Concise Statement of Material Facts, (Docket No. 105). ACHA responded to Plaintiff's Motion, (Docket No. 106), and submitted its Brief in Opposition, (Docket No. 108). Plaintiff then filed an Amended Response to ACHA's Motion. (Docket No. 109). Subsequently,

---

in 2001. (Civil A. 04-cv-536, Docket No. 2). All defendants moved to dismiss the Complaint. (*Id.* at Docket Nos. 24; 27; 35). HUD's and Green Meadows' Motions to Dismiss were granted, but Plaintiff was permitted to proceed with his case against ACHA. (*Id.* at Docket No. 47). Thereafter, in October 2007, this Court granted ACHA's Motion for Summary Judgment, as Plaintiff failed to submit evidence that ACHA's actions were discriminatory or illegal. (*Id.* at Docket No. 102). Plaintiff appealed and the judgments on the Motions to Dismiss and the Summary Judgment Motion were affirmed by the United States Court of Appeals for the Third Circuit on June 22, 2009. (*Id.* at Docket No. 107).

[8] For a discussion of same, refer to Section II.D, *supra*.

upon review of Plaintiff's filings (Docket Nos. 104; 105; 109), wherein the Plaintiff asserted conclusions of law and legal argument, but very few statements of fact,[9] the Court entered an Order, directing Plaintiff to file a Second Amended Response to ACHA's Motion, in compliance with Rule 56 and L.Cv.R. 56(C).[10] (Docket No. 110). Plaintiff then filed his Second Amended Response with the same defects. (Docket No. 111).

Accordingly, these cross Motions for Summary Judgment are now fully briefed, (Docket Nos. 103; 105; 108; 109; 111), and ripe for disposition.

## IV. OVERVIEW OF PARTIES' ARGUMENTS

### A. *Plaintiff's Arguments*

The Court construes Plaintiff's papers to raise three arguments in support of his Motion for Summary Judgment. Plaintiff contends that he has proved a *prima facie* case of race and disability discrimination under Title VI, the FHA, the Rehabilitation Act and the ADA because he has used the mailbox rule to establish that he applied for housing with ACHA. (Docket Nos. 4 at ¶ 1; 98 at 13-15; 4 at ¶ 1; 104 at 9). Plaintiff also maintains that ACHA's assertion that it never received his application is pretext for discrimination. (*Id.*). Next, Plaintiff argues that ACHA's counsel committed a fraud on the Court by stating that ACHA did not receive his application. (Docket No. 104 at 11). Finally, with respect to his defamation claim, Plaintiff avers that ACHA's assertion to the PHRC that he was arrested for threatening a federal judge was defamatory and improperly influenced the PHRC's investigation. (Docket Nos. 98 at 16; 4 at ¶¶ 40-41).

---

[9] *See* Docket Nos. 104; 105; 109.
[10] *See* footnote 1, *supra*.

7

*B.  ACHA's Arguments*

ACHA raises several defenses.  ACHA argues that Plaintiff's claims under Title VI, the FHA, the Rehabilitation Act and the ADA fail because he has not proved a *prima facie* case of race and disability discrimination as there is no evidence that he applied for ACHA housing or that the ACHA denied his application. (Docket No. 100 at ¶¶ 5-8).

Next, ACHA contends that municipalities and municipal organizations, such as itself, cannot be found liable under 42 U.S.C. § 1986. (*Id.* at ¶ 9).  ACHA then asserts that Plaintiff's claims under 42 U.S.C. § 5309, 42 U.S.C. § 1437 and 42 U.S.C. § 14141 do not provide private rights of action.  (*Id.* at ¶¶ 10-12).  ACHA also avers that Plaintiff lacks the authority to enforce criminal statutes, 42 U.S.C. § 3631 and 42 U.S.C. §§ 241; 242; and 245. (*Id.* at ¶ 13).   In addition, ACHA maintains that Plaintiff's Section 1983 claim fails because Plaintiff has not established any deprivation of his constitutional rights. (*Id.* at ¶ 14). Finally, ACHA states that it cannot be found liable for defamation as there is no evidence that it published any allegation that Plaintiff was arrested for threatening a federal judge. (*Id.* at ¶ 15).

## V.    STANDARD OF REVIEW[11]

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v.*

---

[11] Rule 56 was amended effective December 1, 2010. The explanatory notes to the 2010 amendments explain that while the language in Rule 56 was changed from "issue" to "dispute," the standard for granting summary judgment has not changed.  *See* Fed.R.Civ.P. 56 advisory committee's 2010 note.   Thus, the Court considers binding prior jurisprudence of the United States Supreme Court and the United States Court of Appeals for the Third Circuit in arriving at the standard to be employed in addressing the instant motions. *See Toney v. Bledsoe*, 427 F.  App'x 74, 77 n. 5 (3d Cir. 2011) (not precedential).

*Catrett,* 477 U.S. 317, 322 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.,* 478 F.3d 144, 147 (3d Cir. 2007).

The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine dispute of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v. Stroup,* 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. *Celotex Corp.,* 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine dispute of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir. 1989).

As previously noted, Plaintiff has a mental disability and is proceeding *pro se.* *Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). The Court also acknowledges that during the summary judgment stage, it has an obligation to construe *pro se* submissions liberally. *Lynn v. Sec'y, Dep't of Def.*, 431 F. App'x 147, 150 (3d Cir. 2011). In doing so, the Court must interpret the *pro se* party's papers "to raise the strongest arguments

suggested therein." *Hodson v. Alpine Manor, Inc.* 512 F. Supp. 2d 373, 384 (W.D. Pa. 2007). Despite same, a *pro se* plaintiff "still has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'" *Zilich v. Lucht,* 981 F.2d 694, 696 (3d Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)).

Recognizing its duty, the Court has liberally construed <u>all</u> of *pro se* Plaintiff's papers and arguments. Even with such detailed consideration and review of the entire record, the Court finds that Plaintiff has not established a *prima facie* case of race or disability discrimination. In addition, the Court finds no factual or legal basis for Plaintiff's remaining claims.

To more expeditiously address the parties' cross motions for summary judgment, the Court will discuss both simultaneously as it proceeds through its analysis which follows.

## VI.    ANALYSIS

  A.  *Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; Fair Housing Act, 42 U.S.C. § 3601, et seq.; Rehabilitation Act, 29 U.S.C. § 794, and Americans with Disabilities Act, 42 U.S.C. 12101, et seq.*

Plaintiff claims that the ACHA discriminated against him based on his race and disability in violation of Title VI, the FHA, the Rehabilitation Act and the ADA. (*See* Docket No. 4). The factual predicate for Plaintiff's claims under these statutes rests on his alleged application for low-income housing with the ACHA and the ACHA's alleged denial of same. (*Id.*). As set forth below, in order for Plaintiff to prevail under these statutes, he must demonstrate that he applied for and was denied housing assistance. As will be discussed, Plaintiff has not made such showing. Hence, he cannot put forth a *prima facie* case of either race or disability discrimination.

1. <u>Title VI of the Civil Rights Act, 42 U.S.C. § 2000d</u>

Title VI provides that:

> No person in the United States shall, on the ground of race, color,
> or national origin, be excluded from participation in, be denied the
> benefits of, or be subjected to discrimination under any program or
> activity receiving Federal financial assistance.

42 U.S.C. § 2000d.  A claim of intentional discrimination under Title VI is analyzed using the burden-shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and clarified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Gazarov v. Diocese of Erie*, 80 F. App'x 202, 204-05 (3d Cir. 2003) (concluding that the *McDonnell Douglas* burden shifting analysis applies to Title VI claims).  Thereunder, the plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 252-53.  If the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to dispel the presumption of discrimination, and articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.*  If the defendant satisfies this burden, the plaintiff must show, by a preponderance of the evidence, that the alleged reasons proffered by the defendant are pretextual and that the defendant intentionally discriminated against the plaintiff. *Id.*

To establish a *prima facie* case of housing discrimination under Title VI, the plaintiff must prove:

> (1) that he or she is a member of a racial minority, (2) that he or
> she applied for and was qualified to rent or purchase certain
> property or housing, (3) that he or she was rejected, and (4) that the
> housing or rental property remained available thereafter.

*Lindsay v. Yates*, 498 F.3d 434, 438-39 (6th Cir. 2007) (quoting *Mencer v. Princeton Square Apts.*, 228 F.3d 631 (6th Cir. 2000)); *see also Chauhan v. M. Alfieri Co., Inc.*, 897 F.2d 123, 126-

27 (3d Cir. 1990) (finding that the *McDonnell Douglas* standard applies to housing discrimination claims).

  2. Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

The FHA provides for a private cause of action which makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The burden shifting analysis described above applies to claims under the FHA. *See Koorn v. Lacey Twp.*, 78 F. App'x 199, 207 (3d Cir. 2003). Thus, "to establish a prima facie case of discrimination [under the FHA], a plaintiff must prove: (1) that he is in a protected class; (2) that he applied and was qualified for housing; (3) that he was rejected; and (4) housing opportunities remained available." *Id.*

  3. The Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. 12101,*et seq.*

"Section 504 of the Rehabilitation Act prohibits disability discrimination by, *inter alia*, programs and activities receiving federal funds. Title II of the ADA extends Section 504's anti-discrimination principles to public entities generally." *Indiana Area Sch. Dist. v. H.H.*, 428 F. Supp. 2d 361, 363 (W.D. Pa. 2006) (internal citations omitted).

> In order to establish a prima facie showing of disability discrimination under the [Rehabilitation Act], the plaintiff bears the burden of proving that 1) he or she is a "handicapped individual," 2) he or she is "otherwise qualified" for participation in the program, 3) the program receives "federal financial assistance," and 4) he or she was "denied the benefits of" or "subject to discrimination" under the program. *Nathanson v. Medical College of Pa.,* 926 F.2d 1368, 1380 (3d Cir. 1991) (quoting *591 *Strathie v. Dep't. of Transp.,* 716 F.2d 227, 230 (3d Cir. 1983)). Similarly, under the ADA a plaintiff must establish that 1) he or she has a disability; 2) he or she is otherwise

> qualified; and 3) he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability. *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir. 2003); *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003).

*Spieth v. Bucks Cnty. Hous. Auth.*, 594 F. Supp. 2d 584, 590-91 (E.D. Pa. 2009).

4.   Analysis of the Mailbox Rule as it applies to Plaintiff's Housing Application

Plaintiff avers that he submitted his completed and signed application to ACHA via regular mail through the United States Postal Service on May 10, 2010. (Docket No. 111 at 8). He relies on the mailbox rule to establish the fact of his application. (Docket No. 95). For the reasons that follow, there is no genuine dispute of material fact as to whether ACHA denied Plaintiff's application for housing benefits in May 2010.

The mailbox rule provides that:

> depositing in the post office a properly addressed, prepaid letter raises a natural presumption, founded in common experience, that it reached its destination by due course of mail. *Jenson v. McCorkell,* 154 Pa. 323, 325, 26 A. 366, 367 (Pa.1893) (citation omitted). […] Thus, [e]vidence that a letter has been mailed will ordinarily be sufficient to permit a jury to find that the letter was in fact received by the party to whom it was addressed. *Shafer v. A.I.T.S., Inc.,* 285 Pa.Super. 490, 428 A.2d 152, 156 (Pa.Super.1981) (citations omitted).

*Szymanski v. Dotey*, No. 898 EDA 2011, 2012 WL 2821903, at *2-3 (Pa. Super. Ct. July 11, 2012) (internal quotation marks omitted); *see also Phila. Marine Trade Ass'n-Int'l. Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 147 (3d. Cir. 2008) (noting that "if a document is properly mailed, the court will presume the United States Postal Service delivered the document to the addressee in the usual time").

However, "evidence of actual mailing is not required." *Id.* at *3 (quoting *Commonwealth Dep't of Transp. v. Brayman Constr. Corp.,* 513 A.2d 562, 566 (Pa. Commw. Ct. 1986)).

"Documentary evidence of mailing or testimony from the author that a document was mailed may establish the presumption of receipt." *Id.* (citing *Commonwealth Dep't of Transp. v. Grasse,* 606 A.2d 544, 546 (Pa. Commw. Ct. 1992)). In particular, "introducing testimony that the notice was mailed suffices to establish the mailbox rule's presumption of receipt." *Id.* (citing *Meierdierck v. Miller*, 147 A.2d 406, 408 (Pa. 1959)).

Interestingly, "the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed." *Murphy v. Murphy*, 988 A.2d 703, 709 (Pa. Super. Ct. 2010) (quoting *Breza v. Don Farr Moving & Storage Co.,* 828 A.2d 1131, 1135 (Pa. Super. Ct. 2003)). Instead, the presumption of receipt under the mailbox rule may be nullified through the production of evidence demonstrating that the mailing was not in fact received. *See Harasty v. Pub. Sch. Employees' Ret. Bd.*, 945 A.2d 783, 787 (Pa. Commw. Ct. 2008) (finding that defendant rebutted plaintiff's testimony that he mailed his election form by presenting credible evidence that plaintiff's election form was never received, thus nullifying the presumption under the mailbox rule).

Here, although Plaintiff maintains that on May 10, 2010, he submitted his completed and signed application to ACHA via regular mail through the United States Postal Service, (Docket Nos. 4 at ¶¶ 22-23; 111 at 8), the ACHA rebuts his contention through uncontroverted evidence. In particular, Mr. James Bulls, the ACHA Director of Housing Management-Operations Department, filed an Affidavit stating that upon a review of its records, as well as an inquiry with the site managers, the ACHA has no knowledge of Plaintiff's May 2010 housing application. (Docket No. 102-1 at 40). Mr. Bulls also determined that Plaintiff's name does not currently appear on the ACHA's waiting list. (*Id.*). In addition, ACHA filed its list of applications

received from April 2010 through June 2010, which reveals that the ACHA did not receive an application from Plaintiff. (*Id.* at 41-44).

Plaintiff has not brought forth any evidence to contravene the Bulls Affidavit or the ACHA's application log, which demonstrate that no application was received. In addition, despite ACHA's discovery requests for all documents in support of Plaintiff's claims, Plaintiff has not brought forth any evidence to demonstrate that he was denied housing assistance. Evaluating the evidence adduced in the light most favorable to Plaintiff, there is no evidence that the ACHA received a housing application from Plaintiff or that the ACHA considered and denied said application. As there is no genuine dispute of material fact regarding whether ACHA denied Plaintiff's application for housing benefits in May 2010, he cannot demonstrate that the ACHA denied same in a discriminatory manner. Accordingly, Plaintiff has not established a *prima facie* case of race or disability discrimination.[12]

Further, Plaintiff argues that ACHA's counsel committed a fraud on the Court by stating that ACHA did not receive his application. (Docket No. 104 at 11). In order to prove fraud on the court, a party must show: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court." *Reardon v. Leason*, 465 F. App'x 208, 210 (3d Cir. 2012) (quoting *Herring v. United States,* 424 F.3d 384, 390 (3d Cir.2005)) (internal quotation marks omitted). This is a "demanding standard," reserved for "egregious misconduct," perpetrated by an "officer of the court." *Herring,* 424 F.3d at 390.

---

[12] As previously discussed, under the *McDonnell Douglas* burden shifting analysis, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 252-53. If the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to dispel the presumption of discrimination, and articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* If the defendant satisfies this burden, the plaintiff must show, by a preponderance of the evidence, that the alleged reasons proffered by the defendant are pretextual and that the defendant intentionally discriminated against the plaintiff. *Id.* Where, as here, the plaintiff has failed to establish a *prima facie* case of discrimination, the burden shifting analysis ends. Accordingly, Plaintiff's contention that the denial of his application is pretext for discrimination has not been established.

However, as there is no evidence that the ACHA received an application from Plaintiff or that the ACHA considered and denied said application, there is no basis to support a claim of fraud on the Court.

    5.  <u>Conclusion</u>

Based on the foregoing, ACHA is entitled to summary judgment on Plaintiff's claims under Title VI, the FHA, the Rehabilitation Act and the ADA.

    *B.  42 U.S.C. § 1986*

At the outset, the Court notes that Plaintiff simply set forth the title of Section 1986 and did not allege any facts to support liability thereunder. (Docket No. 4). Thus, Plaintiff's claim is not properly pled as pleadings must include factual allegations to support the legal claims asserted. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Milburn v. Girard*, 429 F. Supp. 865, 868-69 (E.D. Pa. 1977) (dismissing a general reference to Section 1986 as insufficient to sustain a claim). Despite same, the Court will address the sufficiency of Plaintiff's Section 1986 claim.

42 U.S.C. § 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefore, and may recover not exceeding five thousand dollars damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. § 1986. Liability under Section 1986 is predicated on knowledge of a violation of Section 1985. *Ludwig v. Carpenters Health & Welfare Fund of Phila. and Vicinity*, 383 F. App'x 224, 226-227 (3d Cir. 2010). Given same, a plaintiff must establish a valid claim under Section 1985 in order to succeed on a Section 1986 claim. *Id.* Section 1985(3) establishes a cause of action against any person who enters into a private conspiracy for the purpose of depriving an individual of the equal protection of the laws. *Rogin v. Bensalem Twp.,* 616 F.2d 680, 696 (3d Cir. 1980).

In order to state a claim under Section 1985, the plaintiff must allege and prove four elements: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) injury to a person or property or deprivation of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters & Joiners Local 610 v. Scott,* 463 U.S. 825, 828-29 (1983).

Plaintiff's Section 1986 claim fails for two reasons. First, he has failed to meet his burden to set forth factual allegations which demonstrate that the individual ACHA Defendants entered into a conspiracy. *See Brookhart v. Rohr*, 385 F. App'x 67, 70 (3d Cir. 2010) ("In order to maintain a cause of action under [Section] 1986, a plaintiff must show the existence of a section 1985 conspiracy"); *see also Clark v. Clabaugh,* 20 F.3d 1290, 1296 n.5 (3d Cir. 1994) (stating that where there is no evidence of a Section 1985 conspiracy, a Section 1986 claim is properly dismissed at the summary judgment stage). Evaluating the record evidence adduced in the light most favorable to Plaintiff, there is no evidence that the individual ACHA Defendants entered into a conspiracy. Thus, there is no genuine dispute of material fact regarding same and ACHA is entitled to summary judgment.

Second, "because a municipality acting in its governmental capacity cannot be a conspirator, municipalities are excluded from liability under Sections 1985 and 1986." *Milburn*, 429 F. Supp. at 868; *see also DiBartolo v. City of Phila.*, No. 99-CV-1734, 2000 WL 217746 (E.D. Pa. Feb. 15, 2000); *Barnes v. City of Coatesville*, No. 93-1444, 1993 WL 259329 (E.D. Pa. June 28, 1993). Housing Authorities, such as the ACHA, are municipalities. *See Solomon v. Phila. Hous. Auth.*, 143 F. App'x 447, 456 n.14 (3d. Cir. 2005). Thus, ACHA itself cannot be held liable under Section 1986. Based on the foregoing, Plaintiff cannot sustain a cause of action under Section 1986 and ACHA is entitled to summary judgment on same.

> C. *Housing and Community Development Act, 42 U.S.C. § 5309; United States Housing Act of 1937, 42 U.S.C. § 1437; 42 U.S.C. § 14141; 42 U.S.C. § 3631; and 18 U.S.C. §§ 241, 242 and 245*

Plaintiff claims ACHA violated the HCDA, the United States Housing Act of 1937 and 42 U.S.C. § 14141. In addition, Plaintiff alleges criminal claims against ACHA under 42 U.S.C. § 3631 and 18 U.S.C. §§ 241, 242 and 245. However, no independent, private right of action is available under any of these statutes. *See Freeman v. Fahey*, 374 F.3d 663, 666 (8th Cir. 2004) (recognizing that there is no private right of action under the HCDA); *Chavis v. Bush,* 305 F. App'x. 11 (3d Cir. 2008) (finding no private right of action under the United States Housing Act of 1937); *Adams v. United States*, No. 07-809C, 2008 WL 4725452, at *2 (Ct. Fed. Cl. July 16, 2008) (stating that no private right of action exists under 42 U.S.C. § 14141); *Kent v. Ed Carber Inc.*, 467 F. App'x 112, 113 (3d Cir. 2012) (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)) (noting that "a private person does not have a 'judicially cognizable interest in the prosecution ... of another'"). Accordingly, ACHA is entitled to summary judgment as to Plaintiff's claims under the HCDA, the United States Housing Act of 1937, 42 U.S.C. § 14141, 42 U.S.C. § 3631, and 18 U.S.C. §§ 241, 242 and 245.

*D. 42 U.S.C. §1983*

Plaintiff also asserts liability under 42 U.S.C. § 1983. Section 1983 provides that "every person who, under color of [state law] subjects, or causes to be subjected, any ... person within the jurisdiction [of the United States] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity." 42 U.S.C. § 1983. In other words, Section 1983 does not create substantive rights but provides a vehicle by which violation of rights created by the Constitution or federal law may be vindicated. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 907 (3d Cir. 1997).

To state a claim under Section 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct was committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31 (1986). Housing authorities operate under color of state law for purposes of Section 1983 liability. *See Hurt v. Phila. Hous. Auth.,* 806 F. Supp. 515, 524 (E.D. Pa. 1992).

In the case at bar, Plaintiff alleges race and disability discrimination against ACHA. Although Plaintiff is an African American with a mental health disability, those facts alone are not sufficient to show that ACHA engaged in misconduct that deprived him of his rights, as there is no evidence that ACHA received and acted on his application. Accordingly, ACHA is entitled to summary judgment as to Plaintiff's Section 1983 claim.

*E.  Defamation*

Plaintiff contends that ACHA's April 22, 2011 letter to the PHRC falsely accused him of being arrested for threatening a federal judge.  (Docket No. 98 at 15).  To the extent that Plaintiff's papers could be construed to assert a claim of defamation against the ACHA, the Court will address same.

In Pennsylvania, defamation includes both libel and slander, and requires a plaintiff to prove:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) abuse of a conditionally privileged occasion.

42 Pa. C.S. § 8343.  Libel is written defamation. *Wilson v. Am. Gen. Fin., Inc.*, 807 F. Supp. 2d 291, 298 (W.D. Pa. 2011). Slander is oral defamation. *Hensley v. Nationwide Mut. Ins. Co.*, No. 98-6680, 1999 WL 391071, at *2 (E.D. Pa. June 14, 1999).

Plaintiff asserts that the ACHA improperly influenced the PHRC while his PHRC claim was pending. (Docket Nos. 98 at 15; 25 at p.61, lns. 3-6). In particular, he maintains that ACHA's April 22, 2011 letter to the PHRC falsely accused him of being arrested for threatening a federal judge. (*Id.*).  Plaintiff makes this allegation because in the PHRC's Findings, the PHRC noted that Plaintiff "was arrested for threatening the Federal District Court Judge who was hearing his discrimination complaint against [ACHA]." (Docket No. 102-1 at 26-27).

The letter states:

> During our telephone conversation earlier this week, you asked that I provide additional information about ACHA procedures. Specifically, you asked about the policies in effect relating to an individual who would be applying for housing.

In respect to the Section 8 program, the waiting list is currently closed and has been for years. No new applicants are being accepted due to the fact that the current waiting list contains thousands of applicants. Mr. Pondexter is not on the current waiting list for Section 8 assistance according to the ACHA's records.

In respect to the Low Income Public Housing program (LIPH), an interested individual may either apply at the ACHA's Central Office or at a [s]ite or by mail. Regardless of the method, the applicant's name is entered into the ACHA's master computer program and put on a waiting list. Each site has a separate waiting list. Mr. Pondexter's name does not currently appear in the ACHA's computer program as an applicant.

You asked about eligibility considerations. No determination as to eligibility is made at the time of application. It is only at the time that the applicant's name comes up for consideration that eligibility factors are considered.

Eligibility factors are outlined on the application form, a sample copy of which is enclosed. Grounds for denial due to criminal activity are listed in the Application Form. The form also reiterates ACHA's policy not to discriminate on the basis of disability in the admission, access to or use of its programs of activities. (See Application, pg. 7).

The Application form also states that if an applicant is determined to be ineligible, the ACHA will send a letter to the applicant explaining the denial. Accordingly, if Mr. Pondexter applied, as he claims, and was denied, as he also claims, he would have received written notice of the reason. Again, at this time, we have uncovered no evidence of an application by Mr. Pondexter in May of 2010.

I am working to provide you with additional information that you requested. In the interim, should you have any questions or wish to discuss the information provided herein, please do not hesitate to call me.

(Docket No. 111-1 at 9-10). Construing the letter in light most favorable to Plaintiff, the letter does not contain any defamatory statement.[13]

Plaintiff has not produced any evidence, other than that letter, to support a defamation claim. Therefore, as the letter does not contain any defamatory statement there is no genuine dispute of material fact as to whether the ACHA defamed Plaintiff.[14] Accordingly, to the extent that Plaintiff asserts a defamation claim, the ACHA is entitled to summary judgment on same. For the same reasons, Plaintiff's Motion for Summary Judgment is therefore denied.

---

[13] Even if the ACHA's letter could be construed as defamatory, the defamation claim would fail because of the privilege applicable to statements made during and related to litigation.

> "It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36, 41 (Pa.Super.Ct.1991). [...] The absolute privilege afforded to participants in a judicial proceeding has a strong policy basis; namely, that "[a]ll persons involved in a judicial proceeding are encouraged by the privilege to speak frankly and argue freely without danger or concern that they may be required to defend their statements in a later defamation action." *Smith v. Griffiths,* 327 Pa.Super. 418, 476 A.2d 22, 24 (Pa.1984).

*Ortiz v. Del. River Port Auth.,* No. 09–6062, 2010 WL 1994911, at *3 (E.D. Pa. May 17, 2010). This litigation privilege applies to "all proceedings in which an officer or tribunal exercises official functions, including quasi-judicial functions." *Id.* at *4. It is applicable to "quasi-judicial proceedings [...] because such proceedings are initiated in the regular course of preparing for contemplated [litigation] proceedings." *Joyner v. Sch. Dist. of Phila.,* 313 F. Supp. 2d 495, 502 n.20 (E.D. Pa. 2004) (quoting *Hurst v. Jiffy Lube,* No. 00–133, 2000 WL 1790112, at *5 (E.D. Pa. Dec. 6, 2000)) (internal quotation marks omitted). Such quasi-judicial proceedings include zoning hearings (*see Urbano v. Meneses,* 431 A.2d 308 (Pa. Super. Ct. 1981)), Equal Employment Opportunity Commission proceedings (*see Hurst,* 2000 WL 1790112, at *5), and National Labor Relations Board employment hearings (*see Doe v. Wyo. Valley Health Care Sys.,* Inc., 987 A.2d 758, 766–68 (Pa. Super. Ct. 2009). Likewise, the litigation privilege applies to PHRC proceedings, as they are initiated in the regular course of preparing for contemplated litigation and involve a commission which applies the law to the facts of a case. *See Ortiz,* 2010 WL 1994911, at *4 (quoting *Milliner v. Enck,* 709 A.2d 417, 419 n. 1 (Pa. Super. Ct. 1998)). Thus, even if ACHA's letter could be construed as defamatory, the defamation claim would fail because the defamation privilege applicable to statements made during and related to litigation encompasses statements made during the course of PHRC proceedings.

[14] Likewise, there is no basis for Plaintiff's assertion that said letter improperly influenced the PHRC while his PHRC claim was pending.

## VII.    CONCLUSION

Based on the foregoing, ACHA's Motion for Summary Judgment, (Docket No. 100), is

GRANTED, and Plaintiff's Motion for Summary Judgment, (Docket No. 98), is DENIED, with

prejudice.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated:          August 21, 2012

cc/ecf:         All Counsel of Record

                Earl A. Pondexter
                P.O. Box 2311
                Grant Street
                Pittsburgh, PA 15230
                (Regular & Certified Mail)